CHARLES J. SCHUCK, Judge.
Robert Ray Robinson, an infant aged fifteen years, was summoned on or about November 9, 1946 to assist in fighting a forest fire in Fayette county, West Virginia. On the evening of that day (about six o’clock) he, .together with a number of other boys and young men, was transported by truck from his home community to the scene of the fire, and sometime after midnight while engaged in what *121 the foresters term “mopping up” meaning thereby quenching or smothering the burning embers and tree stumps after the fire itself has passed over the area, Robinson was struck by a burning log, his left leg crushed and the femur bone fractured. He was carried to a house nearby and about two o’clock A. M. on the following day was removed in an ambulance to a hospital where he was confined for a period of three weeks. His leg was kept in a cast for several months and his last examination revealed a fairly good union of the bone, with the leg, however, about one-half inch shorter than the other or normal leg. He complains of pain in the injured leg from time to time and there is no doubt that he is permanently injured and will suffer some inconvenience by reason of his condition throughout his life. So, too, did he suffer much pain at the time of the injury and for some time thereafter. The hospital bill of approximately $284.00 is, so far as we know, still unpaid and held against the boy’s father who prosecutes the pending claim as next friend.
The facts as presented reveal a rather startling condition or situation surrounding the drafting of this immature boy and make us wonder why one so young, without any parental consent or knowledge, should have been summoned to take part in the rather hazardous undertaking of helping to fight a forest fire that was at that time covering several thousand acres. The evidence shows that it was understood among the boys that they would be fined or punished if they failed to respond. We are convinced by the testimony that this impression prevailed in the community from which this boy was recruited. The department involved recognized his employment by paying him the usual wage paid so-called “fire fighters” in the county or vicinity where the fire was raging, checks covering the amount of wages due him, $2.50, having been sent to him a short time after he was injured.
The evidence as a whole shows conclusively that he was summoned by an agent or fire protector of the department to assist in fighting the fire; that he was transported to the *122 scene of the fire in a truck provided for that purpose; that he was under the impression he would be lined if he refused to respond, notwithstanding his age and slender physical build; that the department treated him as one duly employed or recruited to help; that the work was highly dangerous; that he was paid according to the scale of wages paid for such work in that vicinity; that he was permanently injured while engaged in assisting to extinguish the fire, through no fault or carelessness on his part; that there is a large hospital bill to pay and that he will always suffer some inconvenience and impairment by reason of his injuries.
We, therefore, are of the opinion that one so young and immature should not have been called upon to perform such a hazardous and dangerous task but having been summoned and responded as requested, should be compensated accordingly. We feel than an award of two thousand dollars ($2000.00) should be made to this infant claimant, and recommend that the Legislature make an appropriation in the aforesaid amount and that a full release be executed both by him and his father when the award is paid.